UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 18-CV-5088 (DLI) (RER)
_____

J & J SPORTS PRODUCTIONS, INC.,

Plaintiff,

VERSUS

MEGALY BELLIARD AND THE NEW SANTIAGO RESTAURANT CORP.,

Defendants.

_____

**REPORT & RECOMMENDATION**

January 25, 2022
_____

**TO THE HONORABLE DORA L. IRIZARRY**
**SENIOR UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:[1]**

J & J Sports Productions, Inc. ("Plaintiff") brought this action under the Communications Act

of 1934, as amended, 47 U.S.C. §§ 605, *et seq.*, and the Cable & Television Consumer Protection

and Competition Act of 1992, as amended, 47 U.S.C. §§ 553, *et seq.* (ECF No. 1 ("Compl."))

against Magaly Belliard ("Belliard"), individually and doing business as The New Santiago

Restaurant Corp., in turn d/b/a Santiago Restaurant ("Santiago Restaurant", and collectively

"Defendants"). On June 4, 2019, Plaintiff amended its Complaint as to both Defendants, bringing

claims only under 47 U.S.C. § 553. Plaintiff seeks $60,000 in statutory and enhanced damages

---

[1] Hannah Rochford, a Brooklyn Law School student and intern in my Chambers, provided substantial assistance in researching and drafting this Report and Recommendation.

plus attorneys' fees and costs. (ECF No. 24 ("Am. Compl.")). Belliard answered the Amended

Complaint, representing herself *pro se*. (ECF No. 31 ("Ans.")). Santiago Restaurant failed to

appear or otherwise respond to the Amended Complaint. On November 14, 2019, the Clerk of the

Court entered default against Santiago Restaurant. (ECF No. 35). On October 30, 2020, Plaintiff

filed a motion for summary judgment against Belliard (ECF No. 55 ("SJ Mot.")), which Your

Honor referred to me for a report and recommendation (ECF order dated 8/19/21). On May 25,

2021, Plaintiff filed a motion for default judgment against Santiago Restaurant (ECF No. 60 ("Mot.

for Default J.")), which Your Honor also referred to me for a report and recommendation (ECF

order dated 5/26/21). For the reasons set forth herein, I respectfully recommend that both motions

be granted, and that judgment be entered in favor of Plaintiff for $2,480, consisting of $2,000 in

statutory damages and $480 in costs, jointly and severally against both Defendants.

## BACKGROUND

Plaintiff is a California corporation with its principal place of business at 950 So. Bascom Ave.,

Ste. 3010, San Jose. (Am. Compl. ¶ 6). Santiago Restaurant is licensed to do business with the

state of New York and has its principal place of business at 3412 Fulton St., Brooklyn. (*Id*. ¶ 7-8).

Belliard is an "Officer, Director, Shareholder and/or Principal" of Santiago Restaurant. (*Id*. ¶ 9).

Plaintiff is a commercial distributor and licensor of sporting events; it engages in

marketing, advertising, promoting, administering, and transmitting sporting events to the

commercial entities that make up its customers. (*Id*. ¶ 20). Plaintiff entered into a contract with

Mayweather Productions, which granted Plaintiff the exclusive right to distribute nationwide

*"Floyd Mayweather, Jr. V Andre Berto WBA/WBC World Welterweight Championship Fight

Program"* ("the Program") which aired on September 12, 2015. (*Id*. ¶ 18; ECF No. 60-1 ("Default

Mem.") at 1; ECF No. 60-2). Commercial establishments like Santiago Restaurant required contractual authorization from Plaintiff in order to broadcast the Program. (Am. Compl. ¶ 21).

Plaintiff transmitted the Program via satellite but required electronic decoding in order for viewers to receive the satellite signal to their cable systems. (*Id*. ¶ 22). Plaintiff alleges that by means of a cable system Santiago Restaurant deliberately intercepted or received the Program's satellite signal without paying the applicable commercial fee to receive the broadcast. (*Id*. ¶ 29). Plaintiff further alleges that Santiago Restaurant broadcast the program willfully and for the purpose of financial gain. (*Id*. ¶ 15-16). As Santiago Restaurant had a capacity of fewer than 100 people (*Id*. ¶ 25; *see also* ECF No. 60-3, Exhibit 5 ("Celestin Aff.") at 1), the commercial fee to lawfully broadcast the Program was $2,000. (Am. Compl. ¶ 26; ECF No. 60-2, Exhibit 2).

According to Plaintiff's investigator, on the day and time of the Program, the Program was playing on some, but not all, of the televisions in Santiago Restaurant. (Celestin Aff. at 1). Plaintiff's investigator did not pay a cover charge to enter the establishment and did not state that Santiago Restaurant advertised the event; the investigator did not describe the number of people present or make purchases at the establishment. (*Id*.)

After Santiago Restaurant had been properly served[2] and failed to appear, Plaintiff requested a certificate of default on November 8, 2019. (ECF No. 33). The Clerk of the Court promptly entered default on November 14, 2019. (ECF No. 35). Plaintiff filed its motion for summary judgment against Belliard on October 30, 2020, following proper service. (ECF Nos. 25 and 55). Plaintiff then filed its motion for default judgment against Santiago Restaurant on May 25, 2021. (ECF No. 60).

---

[2] According to the Affidavit of Service, Plaintiff served Santiago Restaurant through the New York Secretary of State pursuant to New York Business Corporation Law § 306. (Aff. of Service, ECF No. 26).

**LEGAL STANDARDS**

I.    Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process that must be followed for default judgment to be granted. *J&J Sports Prods. v. Gomez*, No. 18-CV-5119 (KAM) (CLP), 2019 U.S. Dist. LEXIS 116474, *4 (E.D.N.Y. July 11, 2019) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); Fed. R. Civ. P. 55. First, pursuant to Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise" the clerk will enter default. Fed R. Civ. P. 55(a); *see also Gomez*, 2019 U.S. Dist. LEXIS 116474, at *4. An entry of default is "a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *New York v. Debt Resolve*, No. 18-CV-09812 (AJN) (SN), 2021 U.S. Dist. LEXIS 22604, at *4 (S.D.N.Y. Feb 4, 2021), *adopted by* 2021 U.S. Dist. LEXIS 60985 (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).

For the second step, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). For a default judgment to be entered, it "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). A party's default constitutes a concession "of all well pleaded allegations" in the complaint regarding liability, but it is not "an admission of the damages." *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A court will grant default judgment when the reasonable inferences of a plaintiff's well pleaded factual allegations establish a defendant's liability. *See* Fed. R. Civ. P. 54(c); *see also Greyhound*, 973 F.2d 155, at 158; *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [Defendant's] default, a court is required to accept all of [Plaintiff's] factual allegations as true and draw all reasonable inferences in its favor…but it is also required to determine whether

[Plaintiff's] allegations establish [Defendant's] liability as a matter of law"). Finally, in order to determine damages, the plaintiff must show that "the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d 155, at 159.

In the Second Circuit, "defaults are generally disfavored" as there is an "oft-stated preference for resolving disputes on the merits." *Enron Oil Corp.*, 10 F.3d 90, at 95. Accordingly, when there is doubt as to the granting of a default, it "should be resolved in favor of the defaulting party." *Id.*, at 95.  Regardless, the district court has the discretion to determine the outcome of a motion for an entry of default, since "it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Id.* (noting "[s]uch discretion is nonetheless not unlimited" and that the Second Circuit has "reversed its exercise even where the abuse was not glaring").

## II.    Summary Judgment

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Waller v. Muchnick, Golieb & Golieb, P.C.*, 523 F. App'x 55, 57 (2d Cir. 2013). This standard applies even when the motion is unopposed. *Id*; *see also Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)) ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" (emphasis original)). In determining whether a genuine dispute of material fact exists, the court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.*" ING Bank N.V. v. M/V Temara*, 892 F.3d 511, 518 (2d Cir. 2018).

5

## DISCUSSION

I.   Default Judgment Against Santiago Restaurant

To determine whether the Clerk's entry of default was proper, the Court must first look to whether Santiago Restaurant was served properly; as discussed above, service was proper. The Court must next establish that Santiago Restaurant failed to answer or otherwise defend itself. Santiago Restaurant may not appear *pro se*, and must be represented by an attorney. *Phillips v. Tobin*, 548 F.2d 408, 411 (2d Cir. 1976); *see also Khurana v. JMP USA, Inc.*, No. 14-CV-4448 (SIL), 2017 U.S. Dist. LEXIS 52063, at *4-5 (E.D.N.Y. Apr. 5, 2017) (quoting *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006)). Although Belliard represented herself *pro se* and filed an answer to the Amended Complaint, this is not imputable to Santiago Restaurant. *Id.* ("This rule is fully applicable even where the sole shareholder of the defaulting corporation elects to proceed *pro se* regarding his personal liability because he is, as a matter of law, situated differently from the corporation, whose interests may at times 'overlap but are not identical in all respects.'").

It is evident from the docket that Santiago Restaurant did not appear or otherwise defend itself in the action. (ECF No. 35). This default was supported by affidavit and Plaintiff has applied to the Court for default judgment. Fed. R. Civ. P. Rule 55(a); (ECF No. 33 ("Certificate of Default")); (ECF No. 60 ("Mot. for Default J.")). Thus, Plaintiff has met the preliminary steps for the Court to grant default judgment against Santiago Restaurant.

II.   Santiago Restaurant is Liable Under 47 U.S.C § 553

Section 553(a)(1) provides that: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47

U.S.C. § 553(a)(1). This statute was enacted in response to "'the theft of cable service,' including

'gaining access to premium movie and sports channels without paying for the receipt of those

services.'" *International Cablevision v. Sykes*, 997 F.2d 998, 1003 (2d Cir. 1993) (quoting H.R.

Rep. No. 934, 98th Cong., 2d Sess. 83 (1984)).[3] In order to sufficiently plead a claim under § 553,

a plaintiff must include "factual allegations regarding the manner of the transmission." *J & J Sports*

*Prods. v. Shady A. Abdelraouf & Cleopatra Queen Lounge, Inc.*, No. 18-CV-2547 (ARR) (VMS),

2019 U.S. Dist. LEXIS 18677, at *9 (E.D.N.Y. Feb. 5, 2019) (citing *Nacipucha*, 2018 U.S. Dist.

LEXIS 85083, at *5; *Paucar*, 2018 U.S. Dist. LEXIS 119289, at *5-6; *Ferreiras*, 2018 U.S. Dist.

LEXIS 198934, at *6, 9).

To establish a violation of § 553, Plaintiff must properly allege that Santiago Restaurant

received and exhibited the Program, that it was not authorized to do so, and that the Program was

a cable transmission. 47 U.S.C. § 553(a)(1); *see also Time Warner Cable v Googies Luncheonette,*

*Inc.*, 77 F. Supp. 2d 485, 488 (S.D.N.Y. Nov. 8, 1999) (citing *Time Warner Cable of New York*

*City v. Taco Rapido Restaurant*, 988 F. Supp. 107, 110 (E.D.N.Y. 1997) ("It is well established

that unlicensed reception and exhibition of a cable transmission violates section 553 of title 47").

To prove transmission under § 553, Plaintiff must provide "factual allegations regarding the

manner of the transmission." *Abdelraouf*, 2019 U.S. Dist. LEXIS 18677 at *3 (citing *Nacipucha*,

2018 U.S. Dist. LEXIS 85083, at *5). Plaintiff has further alleged that Santiago Restaurant violated

§ 553 willfully and for financial gain. (Am. Compl. ¶ 14-16). Under § 553, the court may enhance

---

[3] In its Amended Complaint Plaintiff abandoned any claims against Defendants under 47 U.S.C. § 605. (Compare Am. Compl. ¶¶ 1, 27-34 with Compl. ¶¶ 1, 15-24). While § 605 of the Communications Act "prohibits a broad range of unauthorized interception of communications, in contrast, § 553 concerns only the interception of cable transmissions." *Joe Hand Promotions v. Martinez*, No. 07-CV-6907 (GBD) (MHD), 2008 U.S. Dist. LEXIS 124058, *6 (S.D.N.Y. Feb. 11, 2008); *see also Sykes*, 75 F.3d 123, at 133 (distinguishing the two statutes, "605 applies to a considerable body of radio transmissions to which § 553 is inapplicable, while § 553 applies to any transmissions via cable, whether or not they originate as radio transmissions"). In light of the allegations in the Amended Complaint (Am. Compl. ¶¶ 1, 27-34), the Court will examine only Plaintiff's § 553 claim.

an award of damages where it finds a defendant to have acted willfully and for the purpose of financial gain. 47 U.S.C. § 553(a)(1)(B).

Due to Santiago Restaurant's default, the Court must accept Plaintiff's well-pleaded factual allegations as true, and Plaintiff has alleged that the Program was playing at Santiago Restaurant on September 12, 2015. (Celestin Aff. at 1). Plaintiff has also properly alleged that Santiago Restaurant was not authorized to transmit the Program, as Plaintiff has shown that it had the exclusive right to sublicense the Program to commercial entities within the United States and that it did not authorize Santiago Restaurant to exhibit the Program. (Am. Compl. ¶ 18; Default Mem. at 1; ECF No. 60-2). Further, Plaintiff alleged that the Program was transmitted via satellite signal and subsequently retransmitted through cable systems. (Am. Compl. ¶ 22). Thus, Plaintiff has established Santiago Restaurant's violation of § 553, and I respectfully recommend that the Court grant default judgment on this claim.

Further, Plaintiff has established that Santiago Restaurant's conduct was willful and for private financial gain. Courts in this District have held that the unlicensed reception and exhibition of a cable transmission is willful as "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Googies Luncheonette*, 77 F. Supp. 2d 485, at 490; *see also Taco Rapido Restaurant*, 988 F. Supp. 107, at 111 ("In order for [Defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way as to receive and view the scrambled transmission. Therefore, [Defendant's] conduct was willful."). Courts in this District have also held that an unlicensed broadcast was willfully intercepted and broadcast for private financial gain where it is displayed in a defendant's business. *See Traffic Sports USA v. La Camisa Negra Rest. & Bar Corp.*, No. 11-CV-1475 (ARR) (RLM), 2012 U.S. Dist. LEXIS 105180, at *13,

8

(E.D.N.Y. May 23, 2012), *adopted by* 2012 U.S. Dist. LEXIS 105220 (E.D.N.Y. July 27, 2012)

(explaining that restaurant's actions were "clearly willful and for financial gain" where it could

not receive "the broadcast without taking active steps to intercept the signal" and "exhibited the

Event in conjunction with the operation of its commercial establishment"). Having determined that

Santiago Restaurant did receive and exhibit the Program via cable system and without

authorization, it follows that Santiago Restaurant did so willfully and for purposes of financial

gain.

**III.** Summary Judgment Against Belliard

Plaintiff seeks summary judgment against Belliard on its claim under 47 U.S.C. § 553. (SJ

Mot. at 1; Am. Compl. at 7). Belliard has not opposed the motion despite having received a copy.

(*See* ECF Nos. 56–59).

For individual liability to attach under § 553 there are additional barriers beyond those

discussed above, specifically, a showing that the defendant was individually liable through

"contributory infringement" or "vicarious liability." *J & J Sports Prods. v. Abdelraouf*, No. 18-

CV-2547 (ARR) (VMS), 2018 U.S. Dist. LEXIS 199728, at *18 (E.D.N.Y. Nov. 21, 2018).

"Contributory infringement" is shown when the individual defendant "authorize[d] the violations,"

and "vicarious liability" is shown when the individual defendant "had a right and ability to

supervise the infringing activities and had an obvious and direct financial interest in the

exploitation of [the] copyrighted materials." *Id*. (quoting *J & J Sports Prods. v. Tellez*, No. 11-

CV-2823 (SMG), 2011 U.S. Dist. LEXIS 146464, at *8 (E.D.N.Y. Dec. 20, 2011)).

The facts Plaintiff alleges in its § 553 claim against Belliard are substantially identical to those

against Santiago Restaurant, and therefore establish a *prima facie* violation of the law. As to

Belliard's individual liability, Plaintiff further alleges that Belliard owned, managed, and was an officer of the entity that owned Santiago Restaurant; that she knew she needed to pay a sub-licensing fee to show the Program at the Restaurant; that she did not pay such a fee; that she was present when the program was shown at the Restaurant; that she ordered the Program from an unauthorized source; that she or an employee under her control advertised that the Program would be shown at the Restaurant; that the Program was in fact screened at Santiago Restaurant on the night of September 12, 2015; and that patrons were served food and drink while the Program was displayed. (SJ Mot. at 7–8; ECF No. 55-1, Exhibit 2 ("Unanswered Admissions")). Much of this information is in the record via Plaintiff's Rule 36 requests for admissions, which were deemed admitted after Belliard failed to answer them.[4] Although Plaintiff's unanswered requests for admissions at times contradict one another and the other evidence that Plaintiff has submitted in support of this motion,[5] the nonconflicting allegations in Plaintiff's pleadings and requests for admissions suffice to show that Belliard is personally liable. *See Joe Hand Promotions, Inc. v. Maupin*, No. 15-CV-06355 (ADS) (AKT), 2018 U.S. Dist. LEXIS 89185, at *17 (E.D.N.Y. May 25, 2018) (quoting *J & J Sports Prods., Inc. v. Emily Bar Rest. Inc.*, No. 15-CV-6499, 2016 U.S. Dist. LEXIS 133905, at *2 (E.D.N.Y. Sept. 27, 2016)) (finding an individual defendant liable for cable theft when he "participated in, authorized or ha[d] knowledge of the violation," and "played a direct role in the decision to display the Program."); *Mari*, 2012 U.S. Dist. LEXIS 40284, at *8-

---

[4] "By operation of Rule 36(a)(3), '[a] matter is admitted unless, within 30 days after being served [with Requests for Admissions], the party to whom the request is directed serves on the requesting party a written answer or objection . . .'" *J&J Sports Prods. v. Mari*, No. 10-CV-455(DLI) (JMA), 2012 U.S. Dist. LEXIS 40284, at *2 (E.D.N.Y. Mar. 23, 2012) (quoting Fed. R. Civ. P. 36(a)(3)). "Once admitted, the matter that is the subject of a request for admission 'is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.'" *Id.* (quoting Fed. R. Civ. P. 36(b)).

[5] For example, the requests for admissions simultaneously allege several methods of intercepting the Program that could not all be true at once (Unanswered Admissions # 22–26), and state that a cover was charged at Santiago Restaurant (*Id.* # 18) while Plaintiff's own investigator denies having paid a cover charge (Celestin Aff. at 1).

9 (finding an individual defendant liable when he admitted, "due to his failure to answer discovery requests, that he: (1) was the principal agent of [the establishment at issue]; (2) was not authorized by plaintiff to exhibit the [program at issue]; and (3) knowingly and willingly exhibited it" while benefitting financially from showing the program); *J&J Sports Prods. v. Isaacs*, No. 06-CV-3385 (SJF) (CLP), 2008 U.S. Dist. LEXIS 101372, at *7-8 (E.D.N.Y. Dec. 4, 2008) (finding an individual defendant personally liable for cable theft on the basis of unanswered requests for admissions). As such, I respectfully recommend that Plaintiff's motion for summary judgment against Belliard be granted, and that Belliard be held jointly and severally liable with Santiago Restaurant for violating 47 U.S.C. § 553.[6]

## IV.    Damages

In both its motions for default judgment and summary judgment, Plaintiff has requested statutory and enhanced damages under 47 U.S.C. § 605. (Default Mem. at 6-10; ECF 55-2 ("Summary Judgment Mem.") at 16). However, in the amended complaint Plaintiff did not request damages under § 605. (Am. Compl. at ¶ 34). Because an award of damages under § 605 would "differ in kind from…what is demanded from the pleadings," an award under this statute would be improper. Fed. R. Civ. P. 54(c); *see also Ames v. Stat Fire. Suppression, Inc.*, No. 03-CV-6163 (NG) (CLP), 2005 U.S. Dist. LEXIS 10004, *4 (E.D.N.Y. May 25, 2005) ("Rule 54(c) limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of

---

[6] Nevertheless, Plaintiff should once again be admonished for its sloppy pleadings. *See, e.g.*, *Abdelraouf*, 2018 U.S. Dist. LEXIS 199728, at *19 (collecting cases) ("Plaintiff routinely presents sloppy and incomplete pleadings. Indeed, courts in this district have drawn attention to Plaintiff's use of boilerplate language for more than a decade."); *see also J & J Sports Prods. v. Brentwood Veteran War Mem'l, Inc.*, No. 17-CV-6833 (ADS) (GRB), 2019 U.S. Dist. LEXIS 148590, at *2-4 (E.D.N.Y. Aug. 30, 2019) (describing Plaintiff as "a frequent litigant noted for slapdash filings, intransigence in the face of repeated judicial criticism, and frequent disregard of law, procedure, and rules[.]").

damages demanded in the complaint"). As such, damages are only available to Plaintiff under 47 U.S.C. § 553.

There are two possible computations that may be used to award damages under 47 U.S.C. § 553. 47 U.S.C. § 553(c)(3)(A). An aggrieved party may either recover (1) "actual damages suffered as a result of the violation and any profits of the violator that are attributable to the violation," or (2) "statutory damages for all violations" in an amount of no less than $250 and no more than $10,000. 47 U.S.C. § 553(c)(3)(A)(i); 47 U.S.C. § 553(c)(3)(A)(ii). Further, a court may increase the award using either computation method by an amount no greater than $50,000 if "the violation was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B). Unlike under § 605, under § 553 the court also has the discretion to decrease an award of damages where it finds "the violator was not aware" it was violating the statute. 47 U.S.C. § 553(c)(3)(C) ("In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100.").

A.  Statutory Damages

The amount of statutory damages courts in this Circuit have awarded under § 553 have varied widely and have typically been awarded in cases with distinctly different facts from those present here. *Compare Time Warner Cable of NYC v. Bleeker*, No. 99-CV-3559 (AKH) (KNF), 2001 U.S. Dist. LEXIS 17865, *15 (S.D.N.Y. Oct. 30, 2001) (awarding $1,000 in statutory damages with no enhancement under § 553, an amount equal to court's estimate of plaintiff's loss, where defendant willfully received unauthorized cable reception for personal benefit via a cable decoding device for a period of six months), *with Time Warner Cable v. Sanchez*, No. 06-CV-2745 (LBS) (DF), 2007 U.S. Dist. LEXIS 65474, *6 (S.D.N.Y. June 6, 2007) (awarding $8,000 in statutory damages

12

with an enhancement of $5,000 under § 553 where defendant used and sold investigator "two unauthorized converter-decoders, which provided access to all of the premium and pay-per-view services offered by" the cable service provider without paying for such services).

In their discretion, courts have taken into consideration factors such as the "scale" of the defendant's illegal conduct as well as the "seriousness" of their violation to determine the appropriateness of a damages award amount. *Sanchez*, 2007 U.S. Dist. LEXIS 65474, at *20-21 (declining to impose "the greatest possible damages" allowed under § 553 because there was "no evidence that Defendant 'was engaged in large scale, sophisticated and long-running scheme to defraud [P]laintiff'") (quoting *TWC Cable Partners v. Bravo*, No. 94-CV-3250 (JMA) 1996 U.S. Dist. LEXIS 22462, *12 (E.D.N.Y. March 29, 1996)). Here, Santiago Restaurant's single violation was not continuous or ongoing, and its actions did not constitute any large-scale scheme. As such, an award of actual damages is most appropriate. Actual damages here constitute $2,000, the amount Plaintiff would have been paid for Santiago Restaurant to broadcast the Program legally. Thus, I respectfully recommend that Plaintiff be awarded statutory damages of $2,000.[7]

B.  <u>Enhanced Damages</u>

Plaintiff also seeks enhanced damages of $50,000 under § 553(c)(3)(B). (Am. Compl. ¶ 34(b)). Courts in this Circuit have imposed enhanced damages under § 553 based on the seriousness of the violation. *See Sanchez*, 2007 U.S. Dist. LEXIS 65474, at *27; *Bleeker Parking Corp.*, 2001 U.S. Dist. LEXIS 17865, at *15. Courts have determined a violation was serious enough to warrant enhanced damages where there was a "combination of violations present" increasing a defendant's

---

[7] This amount also correlates with what Plaintiff would have received had it correctly pleaded for damages under § 605. *See, e.g.*, *G&G Closed Circuit Events v. Jimenez*, No. 20-CV-7489 (PAE) (SLC), 2021 U.S. Dist. LEXIS 219335, *19 (S.D.N.Y. Nov. 12, 2021) (awarding statutory damages under § 605 in an amount equal to the amount plaintiff would have received in licensing fees in a case involving a restaurant's cable theft).

financial gain. *Compare Sanchez*, 2007 U.S. Dist. LEXIS 65474, at \*27 (awarding \$5,000 in enhanced damages where "[d]efendant's own unauthorized receipt of premium programming, [was] combined with at least two illegal sales for apparent financial gain") *with Bleeker Parking Corp.*, 2001 U.S. Dist. LEXIS 17865, at \*15 (declining to imposed enhanced damages where defendant willfully received unauthorized cable reception for six months but was not doing so for financial gain by selling decoders). The facts of this case are not applicable to § 553 violations involving the use and sale of cable-decoding devices, and Santiago Restaurant's singular violation did not rise to the level of seriousness that would warrant an award of enhanced damages.[8] Thus, I respectfully recommend that the Court decline to award enhanced damages in this case.

C.  Attorney's Fees and Costs

Section 553(c)(2)(C) provides for an award of attorney's fees and costs.  47 U.S.C. § 553 (c)(2)(C). Plaintiff has requested additional time after the date of final judgment "to submit its Motion for costs and attorneys' fees." (Pl.'s Default Mem. at 11 (requesting 30 days); Pl's Summary Judgment Mem. at 18 (requesting 14 days)). The Court should deny Plaintiff's request for two reasons.

---

[8] It is likely that Plaintiff would have similarly been denied enhanced damages had this case been correctly pleaded under § 605. *See J & J Sports Prods. v. Hot Shots, Inc.*, No. 09-CV-1884(FB), 2010 U.S. Dist. LEXIS 91058, \*6 (E.D.N.Y. April 27, 2010) ("Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages, including whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks."); *J & J Sports Prods. v. Mar Y Las Estrellas*, No. 17-CV-1190 (MKB) (ST), 2018 U.S. Dist. LEXIS 164454, \*17 (E.D.N.Y. Sep. 25, 2018) (declining to award enhanced damages where there were "no allegations of repeated violations. . . Plaintiff did not suffer significant actual damages. . . [and there was] no evidence of substantial unlawful monetary gains"); *See also, e.g.*, *J & J Sports Prods. v. Martinez*, No. 07-CV-3455 (ENV) (RER), 2009 U.S. Dist. LEXIS 133701, \*5-6 (E.D.N.Y. June 9, 2009) (declining to award enhanced damages under § 605 where defendant restaurant exhibited an unlicensed broadcast of a boxing match to approximately 40 patrons but did not charge a cover fee); *Joe Hand Promotions v. Shaikh*, No. 19-CV-3500, U.S. Dist. LEXIS 38738, \*24 (E.D.N.Y. March 4, 2020) (where, under similar facts, the court declined to award enhanced damages under § 605, explaining that "the record is devoid of any reason to believe that [Santiago Restaurant] repeatedly violated the Communications Act, any evidence of actual damages, and any evidence that defendant received substantial unlawful monetary gains or advertised the event").

14

First, such piecemeal litigation is inefficient and a waste of judicial resources. There is no reason why Plaintiff could not have submitted a fee application along with either or both the motion for summary judgment or for default judgment.[9] Second, and more importantly, any such application would likely be denied. Firmly established precedent in the Second Circuit requires "'contemporaneous time records' that 'specify, for each attorney, the date, the hours expended, and the nature of the work done.'" *G & G Closed Circuit Events v. Vasquez*, No. 20-CV-2030 (RJD) (SMG), 2020 U.S. Dist. LEXIS 244043, at *11 (E.D.N.Y. Dec. 27, 2020) adopted by 2021 U.S. Dist. LEXIS 7375 (E.D.N.Y., Jan. 14, 2021) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983)); *see also Kingvision Pay-Per-View v. Jasper Grocery Store*, No. 99-CV-10078 (VM) (JCF), 152 F. Supp. 2d 438, 443 (S.D.N.Y. July 13, 2001) (finding "[c]ounsel's failure to offer more than the most general estimate of time expended in this case . . . precludes any award of fees") (citing *Riordan v. Nationwide Mutual Fire Insurance Co.*, 977 F.2d 47, 53 (2d Cir. 1992)). Plaintiff's counsel, however, is notorious in this District for not maintaining contemporaneous time records and instead submitting "reconstructed" time records, which are routinely rejected as insufficient and inappropriate. *J & J Sports Prods., Inc. v. Dowling*, No. 18-CV-5086 (EK) (RML), 2021 U.S. Dist. LEXIS 134486, at *4 (E.D.N.Y. July 19, 2021) (collecting cases) adopted by 2021 U.S. Dist. LEXIS 180147 (E.D.N.Y., Sept. 21, 2021) ("Indeed, numerous courts in this Circuit have rejected the same counsel's request for attorney's fees in similar cases when counsel failed to provide contemporaneous time records."); *J & J Sports Prods., Inc. v. Dominguez*, No. 19-CV-05110 (RPK) (ST), 2021 U.S. Dist. LEXIS 110266, at *4

---

[9] In the past, this Court has recommended that Plaintiff be permitted to submit an attorney's fee application following the adjudication of a motion for default judgment. *J & J Sports Prods., Inc. v. Dang*, No. 19-CV-5112 (ARR) (RER), 2020 WL 6364898, at *6 (E.D.N.Y. Oct. 13, 2020), *adopted by* 2020 WL 6363905 (Oct. 29, 2020). Such continued recommendations, however, will not follow. This piecemeal approach is wholly inefficient and should not be permitted to continue.

(E.D.N.Y. June 11, 2021) (collecting cases) (noting that "Courts in this District routinely decline to award attorneys' fees in the absence of contemporaneous time records," including in cable-theft cases, and detailing why Plaintiff's request for attorneys' fees should be denied); *J & J Sports Prods., Inc. v. Dang*, No. 19-CV-5112 (ARR) (RER), 2021 WL 2636172, at *1 (E.D.N.Y. Jun. 9, 2021), adopted 2021 WL 2634787 (Jun. 25, 2021) (collecting cases) ("Courts in this District routinely decline to award attorney's fees where, as here, the plaintiff's counsel has failed to maintain and submit contemporaneous time records, and instead relies on 'reconstructed' records")*; J & J Sports Prods. v. Cineus*, No. 18-CV-5109 (AMD) (PK), 2021 U.S. Dist. LEXIS 116525, at *4-6 (E.D.N.Y. May 30, 2021) adopted by 2021 U.S. Dist. LEXIS 115357 (E.D.N.Y., June 21, 2021) ("Counsel has long been on notice that he must submit contemporaneous time record in support of a fee application, yet he has failed to do so here. This failure to heed repeated admonitions by courts is inexplicable and inexcusable."); *G&G Closed Circuit*, 2020 U.S. Dist. LEXIS 244043, at *12 ("I therefore respectfully recommend that plaintiff's motion for attorney's fees be denied in its entirety due to counsel's failure to keep contemporaneous records.") Therefore, I respectfully recommend that Plaintiff's request for additional time to submit an ill-fated attorney's fee application be denied.

As to costs, however, the current record provides sufficient evidence of $80 in service fees and a $400 filing fee. (ECF Nos. 1, 60-3). These costs are reasonable and should be granted without further application. *See Bleeker Parking Corp.*, 2001 U.S. Dist. LEXIS 17865, at *19. Therefore, I respectfully recommend that the Court grant Plaintiff $480 in costs and fees.

## <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that Plaintiff's motions for default judgment and summary judgment be granted and that judgment be entered in Plaintiff's favor for

$2,480, consisting of $2,000 in statutory damages and $480 in costs, jointly and severally against both Defendants.

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Dora L. Irizarry, within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

**/s/ Ramon E. Reyes, Jr.**
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: January 25, 2022
          Brooklyn, NY

17